Actions by Ida L. Eville and H.G. Corley against J.S. Wells for injuries sustained in a truck and automobile collision. The cases were consolidated for trial, and from the judgment defendant appeals.
Judgment reversed, and new trial awarded.
Five persons, on December 5, 1947, were riding in an automobile traveling in a northerly direction on Blanding Road in Duval County Florida, and approached the point of intersection of Blanding and Morse Roads near the City of Jacksonville. Marvin R. Kohn, a colored man, at the time and place was driving a truck loaded with pulp wood. It is alleged that he carelessly and negligently drove the truck into the path of the highway then being traveled by the automobile, thereby causing the driver of the automobile to swerve from his proper place on the highway and in so doing the automobile struck a culvert, which caused serious injuries to four of the occupants of the car and fatally injured Frank B. Eville, the other occupant of the car. Ida L. Eville, widow of Frank B. Eville, and H.G. Corley filed separate suits in the Circuit Court of Duval County, Florida, against J.S. Wells, the appellant.
The declaration alleged that J.S. Wells was the owner of the pulp wood truck then being operated by one Marvin R. Kohn, whose negligence and carelessness caused the collision and injuries. It charged that Marvin R. Kohn negligently operated the truck into the path of the automobile which was the proximate cause of the injuries to four of the passengers and the subsequent death of Frank B. Eville. The cause was submitted to a jury on pleas: (1) Not guilty; (2) a special plea that the defendant Wells was not the owner of the truck; and (3) that Kohn was not operating the truck as Wells' agent, servant or employee, nor with knowledge, acquiescence and consent of any agent, servant or employee of Wells. The cases were consolidated for trial, which resulted in verdicts for the plaintiffs. Appeals have been perfected in the two cases.
The issues made by the pleadings by operation of law placed the burden of proof on the plaintiff below by a preponderance of the evidence as to each material allegation of the declaration, inclusive of the ownership of the pulp wood truck by the defendant-appellant. On this point the trial court charged: "Whether or not J.S. Wells was the owner of the truck in question, it is your duty to consider all the evidence in this case, including the title certificate, certified title certificate, from Tallahassee. But I will say at this point that the title certificate is not conclusive by itself. You are to consider all the testimony in the case at your decision as to *Page 148 
whether or not the defendant Wells owned the truck at the time of the accident."
Chapter 23658, Acts of 1947, Laws of Florida, F.S.A. § 319.20
et seq., affecting certificates of title to motor vehicles, became effective October 1, 1948, after the collision complained of, which occurred on December 4, 1947, and therefore the law applicable to the ownership of motor vehicles prior to the effective date of Chapter 23658 is here controlling.
Chapter 317, F.S.A., regulates the traffic on the highways of Florida and defines (a) emergency vehicles; (b) bus as a motor vehicle designed to carry more than ten passengers; (c) highway intersections; (d) motor cycles; (e) business districts, etc. The owner of a motor vehicle is referred to by subsection (14) of Section 317.01, F.S.A., viz.:
"(14) Owner. A person who holds the legal title of a vehicle, or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or leasee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or leasee or mortgagor shall be deemed the owner, for the purpose of this chapter."
For the purpose of protecting the titles to motor vehicles and prevent confusion in ownership thereof in the State of Florida, the 1923 session of the Legislature enacted Chapter 9157, which provided for the issuance of certificates of title and evidence of registration through a Motor Vehicle Commission of the State of Florida. It regulated the purchase, sale and transfer of ownership of motor vehicles in the State of Florida. A considerable portion of Chapter 9157, Acts of 1923, is carried forward under Chapters 318, 319 and 320, F.S.A. The power and duties of the State Motor Vehicle Commissioner, in part, are set out in Section 318.03, supra. Subsection (2) of Section 318.03 makes it his duty "to issue and cancel title certificates of motor vehicles."
For the purpose of issuing title certificates to owners of motor vehicles in Florida, motor vehicles are defined in Section 319.01 (1) and Section 319.02 (2) defines an owner of a motor vehicle: "`Owner' includes any person, firm, corporation, or association, owning or controlling any motor vehicle by right of purchase, gift, or lease." Section 319.02 authorizes an owner of a motor vehicle to apply to the State Motor Vehicle Commissioner for a "certificate of title" to such motor vehicle. If the Commissioner is satisfied that the applicant is the owner of the motor vehicle, he shall issue to the applicant a certificate of title over his signature and official seal. The certificate so issued shall be good for the life of the vehicle as the same is owned and held. The title certificate shall contain a statement of any liens or incumbrances against the motor vehicle.
Section 319.03, F.S.A., provides that upon the sale of a motor vehicle by the owner for which a title certificate has issued, the holder of the title certificate shall endorse on the back of the same an assignment thereof with a statement of all liens and encumbrances on said motor vehicle, and deliver the same at the time of the delivery of the motor vehicle. The title certificate shall be presented by the assignee or transferee of the motor vehicle to the Motor Vehicle Commissioner and a new title certificate shall issue to the new owner of the motor vehicle. Section 319.15, supra, provides for the notice of liens on motor vehicles to be filed with and recorded in the office of Motor Vehicle Commissioner of the State of Florida.
Pursuant to the cited statutes, supra, certificate of title for the truck in question issued on December 6, 1946, to P.E. Johns of 2386 Beaver Street, Jacksonville. The title certificate was signed in blank to C.W. Andrea, an automobile dealer. See section 319.05. The certificate was assigned and transferred to M.R. Kohn on April 4, 1947. A lien in behalf of J.S. Wells appears thereon in the sum of $1050. On April 9, 1948, a new title certificate to the truck was issued to M.R. Kohn, Jacksonville, Florida, and J.S. Wells held a lien thereon for $1050. These certificates, in the form provided by the statutes, were adduced into evidence in behalf of the defendant during the progress of the trial. *Page 149 
The ownership of the truck, as reflected by the certificates of title, is in M.R. Kohn, with a lien thereon in behalf of Wells in the sum of $1050.
The witness, C.W. Andrea, testified that he was a dealer in trucks and on the 4th day of April, 1947, sold the truck in question to the colored man, Marvin R. Kohn. The title certificate was transferred or assigned on the same date at his place of business in Jacksonville from P.E. Johns to Marvin Kohn. The transfer or assignment was so prepared as to show that J.S. Wells had a lien on the truck for $1050, which sum was paid by Wells to Andrea at the request of Kohn. The title certificate was notarized in Andrea's office and delivered to Kohn, and Kohn paid the balance due on the truck in the sum of $195. M.R. Kohn, according to the witness, left Andrea's place of business with the title certificate to the truck in his pocket and was at the steering wheel of the truck. The evidence given by Kohn is to the same effect or tenor. The defendant-appellant testified that he did not own the truck nor had he been in the possession thereof; that he bought it for Marvin Kohn and had not seen the truck after date of purchase on April 4, 1947. Thus it is that the three witnesses and the title certificates placed the ownership of the truck in M.R. Kohn at the time of impact or collision.
It appears that the defendant went to the scene of the accident and told officers there that he would be responsible for Kohn's appearance in court to meet the charges arising out of the collision. The officers testified that Wells told them that he owned the truck and the colored man was working for him. Wells explained to the jury during the progress of the trial what he meant by the ownership of the truck was that it remained his property until the $1050 had been repaid to him by Kohn. When the admissions against interest on the part of Wells as testified to by the officers are considered in connection with the weight of the testimony on the point of ownership of the truck at the time of the collision, then there is but little, if any, conflict or dispute on the question of ownership of the truck when the accident occurred. The evidence of ownership by Wells of the truck adduced by the plaintiffs below was legally insufficient to support a verdict and judgment for the plaintiffs.
The judgment is reversed and a new trial awarded.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur.